## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DAVID MARK EDWARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **4:13-cv-0692-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff David Mark Edwards ("Edwards") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits and deny Edwards' motion to remand.

### I.  Procedural History

Edwards, who has no past relevant work experience, filed an application for Supplemental Security Income on December 21, 2009, alleging an amended disability onset date of December 21, 2009, due to bad nerves, bipolar disorder, a heart murmur, emphysema, and blindness in his right eye.  (R. 35, 45, 129).  After the SSA denied

Edwards' claim, he requested a hearing before an ALJ.  (R. 109-10).  The ALJ

subsequently denied Edwards' claim, (R. 32-46), which became the final decision of the

Commissioner when the Appeals Council refused to grant review.  (R. 1-6).  Edwards

then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C.

§ 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the

Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment

for that of the Commissioner; instead, it must review the final decision as a whole and

determine if the decision is "reasonable and supported by substantial evidence."  *See id*.

(citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial

evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is

such relevant evidence as a reasonable person would accept as adequate to support a

conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other

citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. §§  404.1520(a)-(g), 416.920(a)-(g).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

3

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.*  However, medical evidence of pain itself, or of its intensity, is not required:

---

[1]  This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, *neither requires objective proof of the pain itself.*
> Thus under both the regulations and the first (objectively identifiable
> condition) and third (reasonably expected to cause pain alleged) parts of
> the *Hand* standard *a claimant who can show that his condition could
> reasonably be expected to give rise to the pain he alleges has established
> a claim of disability and is not required to produce additional, objective
> proof of the pain itself.  See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information

omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported

by medical evidence that satisfies the pain standard is itself sufficient to support a

finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to

disabling pain and satisfies the three part pain standard, the ALJ must find a disability

unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ

must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons
> for refusing to credit a claimant's subjective pain testimony, then the
> [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in
> this rule is the requirement that such articulation of reasons by the [ALJ]
> be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony of

the plaintiff and render a finding of disability.  *Id.*

5

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Edwards had not engaged in substantial gainful activity since December 21, 2009, and, therefore, met Step One.  (R. 37).  Next, the ALJ found that Edwards satisfied Step Two because he suffered from the severe impairments of "chronic obstructive pulmonary disease, emphysema, depression, hypertension, anxiety disorder, alcohol abuse, drug abuse, and impaired vision in the right eye."  *Id*.  The ALJ then proceeded to the next step and found that Edwards failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Edwards has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 416.967(b), but is limited to work which can be performed with blindness in the right eye and with resultant limited peripheral vision, and which would not include a work environment with a large number of employees or supervisors, or involve work with large crowds

(R. 38-39).  The ALJ held that Edwards "has no past relevant work."  (R. 45).  Lastly, in Step Five, the ALJ considered Edwards' age, education,[2] work experience, and RFC,

---

[2]  As of the date of the ALJ's decision, Edwards was 54 years old and had a marginal education.  (R. 45).

6

and determined "there are jobs that exist in significant numbers in the national economy [Edwards] can perform." *Id.* Therefore, the ALJ found that Edwards "has not been under a disability, as defined in the Social Security Act, from December 21, 2009, the date the application was filed." (R. 46).

## V.  Analysis

Edwards takes issue with the ALJ's decision denying his claim and has moved to remand for consideration of new evidence. More specifically, Edwards has moved to remand under sentence six of 42 U.S.C. § 405(g) to allow the Commissioner to consider an August 5, 2013, award of benefits, doc. 16, and contends that (1) the Appeals Council erred by not remanding his claim in light of new evidence and failed to properly explain its decision; (2) the ALJ erred in assessing his RFC; (3) ALJ erred in finding he did not meet a listing; and (4) the ALJ erred in assessing his credibility. The court addresses each contention in turn.

### A.   Edwards' Motion to Remand

Edwards has moved to remand the case under sentence six of 42 U.S.C. § 405(g),[3] contending that the Appeals Council's denial of his claim is inconsistent with the Commissioner's approval of a new claim, which found Edwards disabled as of

---

[3]  Sentence six states, in relevant part, that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

December 1, 2012.  Doc. 16 at 1.  To obtain a remand under sentence six, the settled

law in this circuit requires Edwards to establish that (1) there is new, noncumulative

evidence; (2) the evidence is material; and (3) there is good cause for failure to submit

the evidence at the administrative level.  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th

Cir. 1986).  The new evidence is material if it is "relevant and probative so that there is

a reasonable possibility that it would change the administrative result."  *Id.*  Remand is

not warranted here because Edwards has not established that the evidence is relevant to

his condition at the time of the ALJ's decision.  More specifically, Edwards failed to

show that the approval of his subsequent claim is material to the ALJ's denial of his

benefits on February 21, 2012.  As should be apparent, the Commissioner's finding that

Edwards was disabled beginning December 1, 2012, over nine months after the ALJ

denied benefits in this case, is not chronologically relevant.  As such, it is unlikely to

change the administrative finding that Edwards was not disabled on or before February

21, 2012.  Accordingly, Edwards' motion for remand is without merit and will be

denied.

      B.     The Appeals Council's Actions

Edwards next contends that the ALJ erred when it failed to review his claim in

light of the new evidence he submitted to the Appeals Council.  Doc. 11 at 25-26.  If a

claimant "properly presents new evidence to the [Appeals Council] and it denies

review, [a reviewing court] essentially consider[s] the claimant's evidence anew to

determine whether 'that new evidence renders the denial of benefits erroneous.'" *Levie*, 514 F. App'x. at 832 (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir.2007).  Accordingly, if the ALJ's findings are supported by substantial evidence in light of the new evidence, the Appeals Council did not err by failing to review Edwards' claim.  Therefore, in assessing Edwards' specific contentions of error, this court has considered the record as a whole, including the evidence made part of the record by the Appeals Council, to determine whether the ALJ's findings are supported by substantial evidence.  *Ingram*, 496 F.3d at 1266.

Edwards also contends that the Appeals Council inadequately reviewed the new evidence.  Doc. 11 at 26.  According to Edwards, when "the [Appeals Council] denies review, [it] must show in its written denial that it has adequately evaluated the new evidence."  Doc. 11 at 26 (emphasis deleted).  To support his contention, Edwards relies on *Epps v. Harris*, in which the court found that the Appeals Council's failure to adequately evaluate new evidence required a remand:

> Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it.  Rather, it perfunctorily adhered to the decision of the hearing examiner.  This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination of Epps' disability eligibility reached on the total record.

624 F.2d 1267, 1273 (5th Cir. 1980) (citing *Mann v. Gardner*, 380 F.2d 182, 187 (5th

Cir. 1967).[4]  Edwards' reliance on *Epps* is misplaced because, in *Epps,* the Appeals

Council did not deny review; rather it granted review and then affirmed the decision of

the ALJ.  *Id.* at 1269, 1272; *see also Edwards v. Colvin*, No. 2:11cv883-SRW, 2013

WL 6772975 (M.D. Ala. Dec. 20, 2013) (explaining why *Epps* involved the Appeals

Council's granting of review and affirmance of the ALJ's decision, rather than a denial

of review).  Significantly, the pertinent regulation in effect at the time required that

when the Appeals Council grants review, its "decision shall be made in writing and

contain findings of fact, and a statement of the reasons."  20 C.F.R. § 404.950(c)

(1980).[5]  Therefore, in *Epps* the Appeals Council was compelled by the regulations to

explain its reasons.

    In contrast, here, the Appeals Council did not enter a decision affirming the

ALJ.[6]  As a result, *Epps* writing requirement is not controlling.  Moreover, contrary to

Edwards' contention, the Appeals Council's statement that it "considered the reasons

---

    [4]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

    [5]  The current regulation provides that if the Appeals Council reviews a case and issues a decision, "[a] copy of the Appeals Council's decision will be mailed to the parties at their last known address."  20 C.F.R. § 404.979 (2012).

    [6]  The Appeals Council's denial of review is not a decision.  *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review *or* it may decide to review a case and make a decision.") (emphasis added).

[Edwards] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council," and that it "found that this information does not provide a basis for changing the Administrative Law Judge's decision," (R. 1-2), is sufficient to show that it actually considered the relevant evidence.  After all, "nothing requires the [Appeals Council] to further explain its denial of review." *Levie v. Comm'r of Soc. Sec.*,  514 F. App'x 829, 832 (11th Cir. 2013) (finding identical language sufficient); *see also Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) ("Because a reviewing court must evaluate the claimant's evidence anew, the Appeals Council was not required to provide a more thorough explanation than it did.").  Accordingly, the court finds no error in the Appeals Council's explanation of its decision.

     C.     The ALJ's Finding of an RFC for Light Work

Next, in two related contentions, Edwards takes issue with the ALJ's finding that Edwards could perform a reduced range of light work.  First, based solely on his age[7] (54 at the time of the ALJ's decision), Edwards contends that the ALJ should have found him disabled under the grids[8] based on Grid Rule 201.09, which provides that an

---

[7]  Edwards's observation that a claimant's age under the grids "is to be determined as of the *time of the decision,*" doc. 11 at 8, is irrelevant because Edwards' age at his alleged onset date (51) also meets the age requirement of 201.09, which requires the claimant to be between 50 and 54 years of age.

[8]  The Medical-Vocational Guidelines, (the "grids") found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's RFC when the claimant is unable to perform his

individual of Edwards age with a limited education and no past relevant work, is disabled if limited to sedentary work.  Doc. 11 at 8.  Second, Edwards contends that the ALJ improperly relied on the testimony of the vocational expert (VE) to find Edwards could perform other work at Step Five because "the hypothetical question assumed [Edwards] could work at the light level."  Doc. 11 at 21.  Both contentions depend upon Edwards' unstated assumption that the ALJ erred in finding he could perform a reduced range of light work.

To support his contentions, Edwards asserts that when the evidence submitted to the Appeals Council is considered, the ALJ's denial of benefits is not supported by substantial evidence.  Doc. 11 at 21.  However, the only treatment record submitted to the Appeals Council that relates to Edwards' physical condition shows that he was treated by Dr. Muhammad Tariq for diabetes, hypertension, and hyperlipidemia.  (R. 425-28).  Significantly, Edwards reported no muscle weakness, myalgia, or weakness, and Dr. Tariq's physical examination was completely normal.  (R. 426-27).  In short, Edwards has not pointed the court to any medical evidence that shows he is more restricted than the ALJ's finding.  Moreover, a review of the record shows that the ALJ relied on substantial evidence to find Edwards could perform a reduced range of light

---

vocationally relevant past work.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).  When the claimant's vocational factors and RFC coincide with all the criteria of a particular rule, the rule determines whether the claimant is disabled or not. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

work.  As the ALJ observed, the SSA consultative physical examiner, Dr. James Matic, found "a full range of motion in the cervical and lumbar spine, full range of motion in all joints, good dexterity in both upper extremities, no swelling or skin lesions, and no gait abnormalities."  (R. 44, 283).  Dr. Matic's findings constitute substantial evidence to support the ALJ's RFC decision.  Therefore, the court finds that the ALJ committed no error in assessing Edwards' physical RFC.  Consequently, Edwards failed to satisfy the criteria of Grid Rule 201.09, and the ALJ properly relied on VE testimony to find Edwards could perform other work.

     D.    <u>The Listings</u>

Edwards next contends that his depression and anxiety meet listings 12.04 and 12.06 respectively.  Doc. 11 at 9-20; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter "listing(s)").  Edwards bears the burden of showing that his impairments meet or equal a listed impairment.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  The regulations also provide that Edwards "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [his] medical impairment(s)."  20 C.F.R. § 404.912(a).  Moreover, Edwards' impairments must "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

To determine whether Edwards met listing 12.04 or 12.06, the ALJ initially considered whether Edwards satisfied the paragraph B criteria of the listings.[9] As to the first criteria–i.e. marked restriction of activities of daily living, *see* listings 12.04B(1), 12.06B(1), the ALJ found Edwards had only mild restrictions in activities of daily living because Edwards "reported to Disability Determination Services that he resided with friends, took care of his dog, had difficulties sleeping, some difficulties with personal care, and no longer engaged in his past hobbies, but was able to prepare simple meals, count change, and go outside most days." (R. 38). Next, with respect to the second criteria–i.e. marked difficulties in social functioning, *see* listings 12.04B(2), 12.06B(2), the ALJ found Edwards had moderate difficulties, and noted that "[w]hile [Edwards] reported that he had difficulty getting along with others, he also reported that he resided with friends." *Id.* The ALJ then proceeded to the third criteria–i.e. marked difficulties in maintaining concentration, persistence, or pace, *see* listings 12.04B(3), 12.06B(3), and found that Edwards had mild difficulties because "[Edwards] reported that he finished things he started sometimes, and was able to follow written instructions." *Id.* Finally, the ALJ addressed the last criteria–i.e. repeated episodes of

---

[9] To satisfy the paragraph B criteria for both listings, Edwards must establish he has at least two of four limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* listings 12.04B, 12.06B. For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme." Listing 12.00(C).

decompensation, *see* listings 12.04B(4), 12.06B(4), and found Edwards "has not alleged a history of any such episodes, and no such episodes are documented in the medical evidence of record." *Id.* Based on these findings, the ALJ determined that Edwards did not meet the paragraph B criteria of listing 12.04 or 12.06. (R. 39).

The ALJ then addressed the paragraph C criteria[10] of the listings and found that Edwards did not satisfy them because Edwards "has had no repeated episodes of decompensation noted in the evidence of record," "has not been diagnosed with any residual disease process that would cause decompensation with only minimal increases in mental demands," "has no history of requiring a highly supportive living environment, and has not displayed an inability to function outside of his home." *Id.* It is these findings regarding the paragraph B and C criteria of listings 12.04 and 12.06 that Edwards challenges.

To support his contention of alleged error, Edwards quotes portions of his testimony and summarizes portions of the medical evidence. Doc. 11-20. Although Edwards never explains how the cited evidence demonstrates that he meets a listing, his

---

[10] To satisfy the paragraph C criteria of listing 12.04, Edwards must show that he has one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the him to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. Listing 12.04C. To satisfy the C criteria of listing 12.06, Edwards must show a "complete inability to function independently outside the area of [his] home." Listing 12.06C.

contention appears to be based on mental health source statements completed by his counselor, Mr. David Harvey, LCSW, (R. 418-20, 442-43), and a psychiatric evaluation performed by Dr. M. Elizabeth Lachman, M.D., (R. 437-40).  In that regard, the court notes that Mr. Harvey completed a Medical Source Statement (MSS) on January 25, 2012, indicating Edwards has extreme restrictions in his daily activities and ability to maintain attention and concentration for extended periods, (R. 419), and also opined that Edwards "is unable to be gainfully employed," (R. 420).  Because Mr. Harvey is not an acceptable medical source, s*ee* 20 C.F.R. § 416.913(a) (listing acceptable medical sources), his opinions are not medical source opinions.  20 C.F.R. §  404.927(a)(2).  Nonetheless, evidence from sources such as Mr. Harvey may be used to show the severity of a claimant's impairment, 20 C.F.R. § 404.913(d), and the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *See* SSR 06-03p at *6.

Here, consistent with SSR 06-03, the ALJ considered Mr. Harvey's opinions, and observed that "at no time in 2010 or 2011 did he note any such limitations," and that "[t]o the contrary, Mr. Harvey's treatment notes generally reported [Edwards] was doing well."  (R. 45).  Therefore, the ALJ rejected Mr. Harvey's opinions because "they are inconsistent with the findings and opinions of [Edwards'] treating physicians, the

consultative examiner, and Mr. Harvey's underlying treatment notes." *Id.* After reviewing the record, the court finds that substantial evidence supports these findings. For example, as the ALJ correctly observed, after Edwards "began mental health treatment, his global assessment of functioning scores were consistently in the 60 and 70[11] range after his amended alleged onset date (Exhibits 1F, 8F, and 13F)," and that Dr. June Nichols' consultative "psychological assessment of [Edwards] revealed [his] functioning was only mildly compromised by his mood disorder (Exhibit 4F)." (R. 45). Therefore, the ALJ did not err in rejecting Mr. Harvey's opinions because, even a treating physician's opinions, which are entitled to more deference than those of Mr. Harvey, may be rejected if the ALJ has "good cause." *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records.).

After the ALJ's decision, Edwards saw Dr. Lachman on April 16, 2012, on referral by Mr. Harvey. (R. 437-40). Mr. Harvey also completed another MSS on April

---

[11] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Revision) ("DSM-IV-TR"). A GAF of 61-70 indicates: "**Some mild symptoms** (e.g., depressed mood and mild insomnia), **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, with some meaningful interpersonal relationships**." *DSM-IV-TR* at 34 (emphasis in original).

17, 2012.  (R. 442-43).  Because the Appeals Council made both of these reports a part

of the record, this court must consider whether the reports "render[] the denial of

benefits erroneous." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir.

2007).  The court finds that they do not, in part, because Mr. Harvey's statement is

cumulative of his earlier MSS.  As he did previously, Mr. Harvey once again indicates

Edwards has marked and extreme limitations, and provides no narrative explanation.

(R. 442-43).  As such, Mr. Harvey's subsequent MSS does not undermine the ALJ's

decision to reject Mr. Harvey's earlier opinions, or show that the ALJ erred in finding

Edwards did not meet a listing.

Similarly, although Dr. Lachman's report indicates Edwards has "a marked,

severe and sometimes extreme degree of impairment in all areas related to occupational

functioning," (R. 439), it does not render the ALJ's denial of benefits erroneous

because her opinions are inconsistent with Edwards' mental health treatment notes prior

to the date of the ALJ's decision as discussed above.  It is also significant that there are

no treatment notes in the record from Dr. Lachman prior to her April 2012 evaluation,

and that her report does not indicate she had treated Edwards previously.  Moreover,

Dr. Lachman does not state that her opinions relate to Edwards' condition prior to the

time of the ALJ's decision.  Therefore, Edwards has not shown that Dr. Lachman's

report is chronologically relevant and accordingly, it does not render the ALJ's finding

that Edwards does not meet a listing erroneous.

In short, based on the record before this court, the ALJ reasonably found based on substantial evidence that Edwards does not meet a listing.  Moreover, the new evidence considered by the Appeals Council does not render that finding erroneous.  Accordingly, because this court does not reweigh the evidence, there is no reversible error in the ALJ's finding, and the Appeals Council did not err in failing to review his case.

E.    The ALJ's Credibility Finding

Edwards next contends that the ALJ failed to state adequate reasons for discrediting his testimony.[12]  Doc. 11 at 22-25.   In considering Edwards' subjective symptoms, the ALJ first found that Edwards' "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," (R. 43), and, therefore, that Edwards met the requirements of the pain standard in this circuit.  *See* Section III, *supra*.  However, the ALJ found Edwards' allegations of disabling symptoms were not fully credible.  *Id.*  It is this determination that Edwards challenges, and in light of his appeal, this court must review the ALJ's finding to determine if it is supported by substantial evidence.

---

[12]  Edwards does not contend that the evidence considered by the Appeals Council undermines the ALJ's credibility finding.  *See U.S. v. Cunningham*, 161 F.3d 1343, 1344 (11th 1998) (issues not argued on appeal are abandoned).

In considering Edwards' testimony, the ALJ systematically discussed the factors relevant to his credibility finding.  First, in accordance with the regulations,[13] the ALJ found that "[t]he conflict between [Edwards'] testimony and the medical evidence of record undermines his credibility."  (R. 43-44).  In making this determination, the ALJ noted that while Edwards "reported to Disability Determination Services on February 1, 2010 that he did not use any drugs or alcohol on a daily basis," and "testified that he abstained from substance use or abuse since 2010," the record showed that "he tested positive for marijuana and Propoxyphene on March 8, 2010," that he "was injured in a fight and fall . . . while intoxicated on May 5, 2010," and that "[o]n June 4, 2010, urinalysis revealed the [Edwards] was positive for Benzodiazepines, cocaine, and THC."  (R. 43).  The ALJ also found that Edwards' allegations "that he was unable to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, or use his hands," were inconsistent with the notes of his treating physician, Dr. Tariq, who "consistently noted no physical abnormalities," and with Dr. Matic's physical consultative examination, which "revealed [Edwards] had a full range of motion in the cervical and lumbar spine, full range of motion in all joints, good dexterity in both upper extremities, no swelling or skin lesions, and no gait abnormalities," and that Edwards "could squat and rise, and had 20/30 vision in the left eye."  (R. 44).  These inconsistencies cited by the ALJ show

---

[13]   *See* 20 C.F.R. § 404.1529(c)(4) (ALJ "will consider . . . the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence").

that the ALJ's finding that "[t]he disparity between [Edwards'] allegations and the

objective medical findings further undermines his credibility," *id.*, is reasonable and

supported by the substantial evidence.

Next, in assessing Edwards' alleged mental symptoms, the ALJ noted that

Edwards' "low global assessment of functioning score in 2009 was attributable to his

opiate dependence and improved over time," and that "[a]fter [Edwards] began mental

health treatment, his global assessment of functioning scores were consistently in the 60

and 70 range after his amended alleged onset date." *Id.*  The ALJ also observed that

"Dr. Nichols' psychological assessment . . . revealed [Edwards'] functioning was only

mildly compromised by his mood disorder." *Id.*  Based on these inconsistencies, the

ALJ reasonably concluded that Edwards' mental illness was exacerbated by his drug

and alcohol abuse," and that he had "no more than mild to moderate limitations when

abstinent." *Id.*

Ultimately, based on this record, Edwards has failed to show that the ALJ erred

in failing to credit his testimony of disabling physical and mental symptoms.  To the

contrary, the ALJ articulated specific reasons for discounting Edwards' testimony of

disabling symptoms – all of which are supported by substantial evidence.  Moreover,

even though the ALJ did not credit Edwards' testimony of disabling symptoms, he

recognized that Edwards had some limitations as reflected in his RFC for a reduced

range of light work, which also excluded a work environment with a large number of

employees or supervisors, or involving work with large crowds.  (R. 38-39, 44).

Therefore, based on this record, the court finds that substantial evidence supports the

ALJ's determination that these restrictions account for Edwards' symptoms.

Accordingly, because this court does not reweigh the evidence, there is no reversible

error in the ALJ's credibility finding.

### VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that

Edwards is not disabled is supported by substantial evidence, and that the ALJ applied

proper legal standards in reaching this determination.  Therefore, the Commissioner's

final decision is **AFFIRMED**.  A separate order in accordance with the memorandum

of decision will be entered.

**DONE** this 26th day of September 2014.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

22